# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0115, <u>State of New Hampshire v. Michael Flynn</u>, the court on February 16, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Michael Flynn, appeals his conviction for driving under the influence of an intoxicating liquor (DUI). <u>See</u> RSA 265-A:2 (2014). He argues that the Circuit Court (<u>Gardner</u>, J.) erred by: (1) denying his motion to suppress; (2) taking judicial notice that the road on which he had been driving was a "way" for purposes of RSA 265-A:2 and RSA 259:125 (2014); and (3) determining that the evidence presented at trial was sufficient to support the conviction. We affirm.

The defendant first contends that, under the State and Federal Constitutions, the trial court erred by denying his motion to suppress evidence obtained as a result of his extended detention by police. <u>See</u> N.H. CONST. pt. I, art. 19; U.S. CONST. amends. IV, XIV. He argues that the arresting officer unlawfully expanded the scope of the traffic stop to investigate whether the defendant was driving under the influence of an intoxicating liquor—specifically, by "questioning him about where he had been and what he had been doing." The defendant does not dispute that the initial traffic stop was valid. We conclude that the officer's expanded investigation was lawful because it was supported by reasonable suspicion.

We first address the defendant's argument under the State Constitution and rely upon federal law only to aid in our analysis. <u>State v. Ball</u>, 124 N.H. 226, 231-33 (1983). "When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions <u>de novo</u>." <u>State v. Mouser</u>, 168 N.H. 19, 22 (2015).

A traffic stop is a seizure for purposes of the State Constitution. <u>State v. Blesdell-Moore</u>, 166 N.H. 183, 187 (2014). The scope of the stop must be carefully tailored to its underlying justification. <u>Id</u>. The stop may be expanded to allow an officer to investigate other suspected illegal activity only if the officer has a reasonable and articulable suspicion that other criminal activity is afoot. <u>Id</u>.

To determine the sufficiency of an officer's suspicion, we evaluate the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer. Id. at 188. We recognize that experienced officers' perceptions are entitled to deference, but our deference is not without limit. Id. The articulable facts must lead to something specific and not simply "a general sense that this is probably a bad person who may have committed some kind of crime." Id. at 189 (quotation omitted).

The evidence submitted at the suppression hearing establishes that, at approximately 1 a.m. on November 2, 2014, the officer stopped the defendant's vehicle on Lafayette Road in Rye after observing that the rear lights that normally illuminate the license plate were not on. See RSA 266:44 (2014) (requiring vehicle to have a light that "illuminat[es] the registration plate of [the] vehicle"). The defendant was the driver and sole occupant of the vehicle. Upon approaching the vehicle and explaining to the defendant why he had been stopped, the officer smelled an odor of alcohol emanating from the vehicle. At the suppression hearing, the officer testified that he has worked as a full-time patrol officer for three and one-half years and has been trained in the detection of the mental and physical signs of alcohol impairment. From his training and experience, the officer knew that the "high time[] . . . for [DUI]s" is between the hours of 10 p.m. and 1 a.m. After smelling the odor of alcohol, the officer asked the defendant "where he was coming from." The defendant stated that he had been at a local pub. When the officer questioned the defendant regarding his alcohol consumption, the defendant admitted that he had consumed "two drinks" during the forty-five minutes that he had been at the pub. The officer then asked the defendant to step out of the vehicle and administered field sobriety tests.

In arguing that the officer unlawfully expanded the scope of the traffic stop to question the defendant regarding "where he had been and what he had been doing," the defendant contends that: (1) the record does not support the trial court's finding that the officer smelled an odor of alcohol, because the officer also agreed when questioned that it is not the alcohol, but the "substances you add to" the alcohol, that have an odor; (2) the trial court applied the wrong legal standard because it assessed whether the officer had reasonable suspicion to believe that the defendant "had consumed alcohol . . . instead of . . . [assessing] whether the officer had a reasonable suspicion [that] the defendant had been driving while impaired"; and (3) the odor of alcohol, standing alone, does not provide an officer with reasonable suspicion of criminal activity. We are not persuaded.

First, regardless of his particular phrasing, the officer testified that he smelled an odor emanating from the defendant's vehicle that he associated with alcoholic beverages; thus, the trial court could reasonably find that this odor

2

supported the officer's suspicion. Second, based upon our review of the trial court's order, we conclude that the trial court correctly applied the relevant standard—i.e., whether the officer had reasonable suspicion that the defendant had been, was, or was about to be engaged in criminal activity. See Blesdell-Moore, 166 N.H. at 188. Third, the defendant's argument that an odor of alcohol, by itself, does not provide an officer with reasonable suspicion is beside the point because there were other facts supporting the officer's suspicion. Specifically, the hour at which the defendant was driving, along with the odor of alcohol emanating from the vehicle and the fact that the defendant was the sole occupant, all contributed to the reasonableness of the officer's suspicion.

We conclude, as did the trial court, that when considered together in light of the officer's training and experience, these circumstances provided the officer with reasonable and articulable suspicion sufficient to justify the expansion of the scope of the stop. Accordingly, the officer was permitted to ask the defendant a moderate number of questions to confirm or dispel his suspicion, see State v. Bell, 164 N.H. 452, 455 (2012), and to administer field sobriety tests, see State v. Steeves, 158 N.H. 672, 677 (2009).

Because the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, see State v. McKinnon-Andrews, 151 N.H. 19, 27 (2004), we reach the same result under the Federal Constitution as we do under the State Constitution. Accordingly, we conclude that the trial court did not err in denying the defendant's motion to suppress.

The defendant next argues that the trial court erred by taking judicial notice that Lafayette Road in Rye is a "way" for purposes of RSA 265-A:2 and RSA 259:125. One required element of the offense of driving under the influence of an intoxicating liquor is that the defendant drive the vehicle "upon [a] way," RSA 265-A:2, I, which is defined to include public highways and streets, RSA 259:125, II. The defendant contends that the State failed to present evidence to prove that Lafayette Road is a way. After trial, the defendant filed a motion to dismiss upon this ground, arguing that, without such evidence, his case must be dismissed or he must be found not guilty.

The trial court denied the defendant's motion and instead took judicial notice of the fact that "Lafayette Road is a public way." In its order, the court determined that "Lafayette Road is of sufficient notoriety to be the subject of judicial notice taken by the court"—that is, Lafayette Road is generally known in this jurisdiction as a way. The court further stated that "[i]f the defendant wishe[d] to contest" the court's determination, he could "request a hearing consistent with [Rule] 201" of the New Hampshire Rules of Evidence. Although the defendant filed a motion for reconsideration, which the trial court denied,

3

he did not request a hearing. Thereafter, the trial court found the defendant guilty of the offense.

On appeal, the defendant challenges the trial court's decision to take judicial notice that Lafayette Road is a way. The defendant argues that: (1) the trial court failed to identify the source upon which it relied to make its determination; (2) there was an insufficient record to support the trial court's decision to take judicial notice that Lafayette Road is a way; (3) the taking of judicial notice violated District Division Rule 1.22; (4) the taking of judicial notice violated New Hampshire Rule of Evidence 201; and (5) the trial court's action violated "basic notions of due process or fundamental fairness."

We decline to review the last two arguments because the defendant failed to provide a sufficient record demonstrating that he raised them before the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (stating that, generally, a party may not have judicial review of a matter where the party fails to provide a sufficient record demonstrating that it was raised before the trial court).

As to the defendant's first three arguments, we note that a trial court may take judicial notice of a fact that is not subject to reasonable dispute. State v. Barkus, 152 N.H. 701, 709 (2005); see also N.H. R. Ev. 201(a). "Such a fact must either be generally known within the jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Barkus, 152 N.H. at 709; see also N.H. R. Ev. 201(a)(1), (2). The court may take judicial notice on its own initiative, N.H. R. Ev. 201(c), and may do so "at any stage of the proceeding," N.H. R. Ev. 201(f). In the absence of prior notification from the court, a party may request a hearing "as to the propriety of taking judicial notice and the tenor of the matter noticed." N.H. R. Ev. 201(e).

In support of his first two arguments, the defendant cites State v. Gagnon, 155 N.H. 418 (2007), for the dual principles that the trial court must identify the source upon which it relies to take judicial notice, and that it must ensure that the "record reflects [the] fact noticed and sources consulted." Those principles apply, however, only when the trial court takes judicial notice upon the basis that the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Gagnon, 155 N.H. at 421 (quotation omitted). By contrast, a trial court need not identify or rely upon a particular source in the record when it determines that a fact is notorious, i.e., generally known in the jurisdiction and not subject to reasonable dispute. "No extrinsic information is required for judicial notice of notorious facts because, by their nature, they are well known." Tranter v. Duemling, 129 S.W.3d 257, 262 (Tex. App. 2004); see also Brewer v. State, No. 1270-03, 2004 WL 3093224, at *3 n.22 (Tex. Crim. App. May 19, 2004) (unpublished opinion) ("The party requesting the trial court to take judicial

4

notice of the fact that the sun rises in the east need not provide the court with any additional information.").

In this case, when the trial court took judicial notice of the fact that Lafayette Road is a "way," it did so on the basis that Lafayette Road is generally known in this jurisdiction as a way. The trial court further noted that Lafayette Road—also known as Route 1—is "one of the principal thoroughfares through the Seacoast area." As we have previously held, a trial court may take judicial notice that a public street is a way when, as here, that fact is generally known. See, e.g., Barkus, 152 N.H. at 710 ("The status of I-93 as a 'way' is generally known and not subject to reasonable dispute."); State v. Deane, 101 N.H. 127, 131 (1957) ("We think that the fact that Route #3 is one of the principal highways within this state . . . is a matter of sufficient notoriety to be the subject of judicial notice . . . ."). Indeed, on appeal, the defendant does not dispute that Lafayette Road is generally known as a way.

Because the court took judicial notice on this basis, the court was not required to identify a source for the fact noticed or to ensure that there was a sufficient record to support its determination. Thus, we conclude that the trial court did not err upon either ground.

The defendant's remaining argument is that the court violated District Division Rule 1.22 when it took judicial notice that Lafayette Road is a way. Under that rule, unless the defendant files a notice demanding proof "at least ten days prior to trial," the requirement that the State must "formally prove" that a street is a "way" under RSA 265-A:2 is deemed waived. Dist. Div. R. 1.22. In this case, the defendant filed a timely notice pursuant to Rule 1.22 prior to trial. Accordingly, he argues that the trial court erred "[b]y taking judicial notice . . . and effectively waiving the requirement of formal proof of way under Rule 1.22." We disagree.

In State v. Barkus, we rejected a similar argument, stating that Rule 1.22 did not prohibit the trial court from granting the State's pretrial request to take judicial notice that I-93 is a "way." Barkus, 152 N.H. at 709-10. We observed that nothing in the language of the rule "precludes a trial court from taking judicial notice of a fact and thereby satisfying the 'formal proof' requirement of the rule." Id. at 709. Here, employing the same reasoning, we reject the defendant's argument that Rule 1.22 precluded the trial court from taking judicial notice that Lafayette Road is a way.

Finally, the defendant asserts that there was insufficient evidence to prove that he was driving while impaired. "When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State." State

v. Francis, 167 N.H. 598, 604 (2015). "In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation." State v. Thelusma, 167 N.H. 481, 487 (2015) (quotation omitted). "Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." Id. (quotation omitted).

To prove that the defendant was guilty under RSA 265-A:2, the State was required to prove beyond a reasonable doubt that "the defendant drove or attempted to drive a vehicle upon a way while he was under the influence of intoxicating liquor." State v. Wiggin, 151 N.H. 305, 309 (2004) (quotation omitted); see also RSA 265-A:2, I(a). "To prove that the defendant was under the influence of intoxicating liquor, the State need only prove impairment to any degree." Wiggin, 151 N.H. at 309 (quotations omitted).

In asserting that the evidence was insufficient to prove that he was impaired, the defendant argues that the officer never testified that "the defendant failed any [of the field sobriety] test[s]." Further, the defendant asserts that the weather and road conditions during the field sobriety tests may have affected his performance, that, before administering the tests, the officer failed to properly question the defendant about his medical conditions, and that the officer made observations during the stop that establish that the defendant was not impaired. We disagree.

Considering all of the evidence in the light most favorable to the State, we conclude that the evidence was sufficient to find the defendant guilty of driving while under the influence of intoxicating liquor. The record shows that: (1) the defendant admitted that, prior to being stopped, he had consumed two drinks at a pub within 45 minutes and had consumed one drink at a different pub earlier in the night; (2) when he was asked to perform field sobriety tests, the defendant stumbled as he got out of the vehicle and grabbed the door in order to regain his balance; (3) the officer testified that, while he was instructing the defendant on how to perform the walk-and-turn test, the defendant "ha[d] some issues with balance" and "use[d] his arms for balance"; (4) during the walk-and-turn test, for which the defendant was instructed to walk heel to toe on the white fog line with his arms at his sides, the defendant used his arms for balance, stepped "off the line a few times," and failed to walk heel to toe while performing the test; (5) during the one-legged stand test, for which the defendant was instructed to count to 30 while keeping one foot off of the ground, the defendant "ha[d] trouble with balance," was "swaying side to side," stopped after counting to 20, and then repeated the numbers "24, 25, 26 . . . a couple of times" after restarting; (6) the officer smelled an odor of alcohol emanating from the vehicle and on the defendant's breath; and (7) the defendant refused to take an alcohol concentration test, see State v. Parker, 142 N.H. 319, 322-23 (1997) (stating that a fact finder may infer from the defendant's refusal to take an alcohol concentration test that "the defendant

6

did not take the test . . . because the results might show he was intoxicated"). Further, the officer agreed that, "based on the totality" of what he had observed, he believed that the defendant "was impaired."

We conclude that this evidence was sufficient to support the conviction, and we are not convinced by the defendant's arguments to the contrary. The evidence presented at trial was not insufficient simply because the officer did not explicitly state that the defendant failed the field sobriety tests. To the extent that there was other evidence in the record that countered the State's evidence that the defendant was impaired, it was the role of the fact finder to weigh and resolve any conflicts in the evidence. See Wiggin, 151 N.H. at 309-10.

The remaining issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived. See State v. King, 168 N.H. 340, 346 (2015).

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**